MOLAISON, J.
Intervenors-Appellants, Certain Underwriters at Lloyd's London Syndicates 1414, 457, and 1084 Subscribing to Policy FINFR1503374 ("Underwriters"), appeal from a final default judgment entered on November 29, 2017, which disposes of all claims asserted by plaintiff, ASI Federal Credit Union ("ASI") against defendant, LeoTran Armored Security, LLC ("LeoTran").[1] Underwriters challenge the correctness of the trial court's confirmation of the default judgment alleging both procedural and substantive defects. For the following reasons, we vacate the default judgment and remand the matter for further proceedings.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Plaintiff, ASI, a credit union headquartered in Jefferson Parish, uses automated teller machines ("ATMs") at its branch offices, as well as at several freestanding locations. In 2012, ASI contracted with ATM Worldwide, LLC ("ATMWW) to service its ATMs. ATMWW then contracted with defendant, LeoTran, a licensed armored car company owned by Leonard Tolleson, to provide armored vehicle services and to transport cash to and from ASI's ATMs. LeoTran serviced ASI's ATMs from August of 2013 through December of 2015.
On behalf of LeoTran, Mr. Tolleson purchased an Armored Car Cargo Liability Policy from Underwriters, with an effective policy period extending from April 15, 2015 to April 15, 2016 (the "Policy"). ASI alleged that in December 2015, LeoTran removed over one million dollars of ASI's *1144 cash from ATMs that LeoTran serviced on behalf of ASI, and also from cash reserves that LeoTran held in trust in LeoTran's vault for future cash delivery to the ASI ATMs that LeoTran serviced. ASI averred that, in total, $1,382,200 of ASI's cash went missing while in LeoTran's care, custody and control.
On December 15, 2015, when ASI learned that its money was missing, ASI reported the missing money to state and federal law enforcement officials. During its initial investigation, the Jefferson Parish Sheriff's Office ("JPSO") recovered $34,200, which was returned to ASI.[2] Despite demand by ASI to LeoTran to return all of ASI's cash in its care, custody or control, the remaining $1,348,000 has never been recovered or returned to ASI.
Soon after the money went missing, ASI contacted LeoTran's insurance broker to ascertain available coverage for the loss, which led ASI to Underwriters. In January 2016, ASI submitted a claim to Underwriters under the Policy it issued to LeoTran seeking reimbursement of the missing $1,348,000. Underwriters denied coverage under the Policy for ASI's loss, claiming that under the Policy's directors and officers exclusion, coverage for the intentional theft by Mr. Tolleson, the "founder, principal, and owner of LeoTran, was excluded."[3]
According to ASI, even though LeoTran is defunct and the whereabouts of its owner unknown, in order to interrupt prescription and preserve all potential avenues for recovery, ASI filed suit against LeoTran on December 9, 2016. After several failed attempts to serve LeoTran and Mr. Tolleson with the petition, ASI successfully served LeoTran through the Louisiana Secretary of State on October 30, 2017. On November 14, 2017, ASI filed a motion for preliminary default wherein it stated:
As shown by the Record and/or the Certificate of the Clerk of Court attached hereto, although the 15-day legal delay prescribed by law for answering the Petition has expired, LeoTran has not answered, otherwise filed responsive pleadings, or filed a formal request for extension of time with the Court.
Affixed to the order directing that a preliminary default against LeoTran be entered on the minutes is a certification signed by the deputy clerk on November 14, 2017, the day the motion requesting a preliminary default was filed, certifying that "no answer or other pleadings [had] been filed [by, or on behalf of, LeoTran] in the matter." The following day, on November *1145 15, 2017, the order was signed by the duty judge and a preliminary default judgment against LeoTran was entered into the minutes of the trial court.
On November 29, 2017, ASI filed a motion to confirm the default, wherein ASI stated that pursuant to La. C.C.P. art. 1702(B)(2), "ASI's demand is based, in part, upon the delictual obligation of LeoTran resulting from the loss of ASI's cash that went missing while in LeoTran's care, custody, and control in order to service and stock ASI-branded ATMs."[4] Attached to ASI's motion was the affidavit of its vice president, Brian Menard, and various exhibits annexed thereto, which ASI averred "contain[ed] facts and evidence sufficient to establish a prima facie case" of LeoTran's liability. Additionally, ASI's motion requested that the Court confirm the default judgment against LeoTran "based on the attached documents ...." In the alternative, ASI requested the trial court to set a hearing date to "allow ASI to present the live testimony of ASI's corporate representative to establish a prima facie case." On the same day that ASI filed its motion-without holding a confirmation hearing or the taking of testimony in open court-the trial court confirmed the default judgment in favor of ASI holding LeoTran liable to ASI for the $1,348,000 that was lost or went missing while in LeoTran's care, custody or control. On November 30, 2017, the clerk issued a notice of signing of the default judgment for service by the sheriff upon LeoTran through the secretary of state; service was accomplished on December 7, 2017.
After learning of the final default judgment rendered in favor of ASI, Underwriters filed a petition for intervention into the proceedings on December 18, 2017, seeking a declaration that the Policy does not provide coverage for ASI's claims, and requesting the default judgment be set aside on the grounds that it was procedurally and substantively improperly obtained.[5] Also on December 18, 2017, Underwriters filed a motion for new trial with respect to the default judgment, which the trial court denied on February 26, 2018. Underwriters then moved for a devolutive appeal on April 10, 2018, seeking review of the November 29, 2017 default judgment against LeoTran claiming that, as LeoTran's insurer-who may become liable for all or part of the judgment rendered against its insured in this matter-it is a third party aggrieved by the judgment.
On appeal, Underwriters aver that the final default judgment must be reversed because it is both procedurally and substantively *1146 defective. Specifically, Underwriters maintain the default judgment is procedurally defective because the trial court erred (1) in granting ASI a preliminary default prior to the expiration of LeoTran's deadline to file an answer, and (2) in failing to hold a hearing in open court on the confirmation of default in contravention of La. C.C.P. art. 1702(B)(2). Underwriters contend the default judgment is substantively defective because the trial court erred (1) in failing to grant Underwriters' motion for new trial based on ASI having obtained the default through ill practices, and (2) in granting the default judgment despite ASI's failure to support its motion by sufficient admissible evidence. Because we find merit to Underwriters' contention that the default judgment is procedurally defective, a finding that requires this Court to vacate the judgment and remand the matter to the trial court, we pretermit any review or discussion regarding whether the default judgment should be set aside for ill practices, or whether ASI presented sufficient admissible evidence to establish a prima facie case of LeoTran's liability for tortious conversion, breach of contract, and/or bad faith.
DISCUSSION
I. Jurisdictional Issues
Standing
Our initial inquiry is whether Underwriters have standing to appeal this judgment when Underwriters are not a party to the litigation. Rourke v. Estate of Dretar , 17-672 (La. App. 5 Cir. 5/23/18), 248 So.3d 653. La. C.C.P. art. 2086 provides that "[a] person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken." The sole object of an appeal is to give an aggrieved party to an action recourse to a superior tribunal for the correction of a judgment of an inferior court, and such right is extended, not only to the parties to the suit in which the judgment is rendered, but also to a third party when such third party is aggrieved by the judgment. In re Succession of Walker , 02-625 (La. App. 5 Cir. 12/11/02), 836 So.2d 274, 277-78, writ denied , 03-110 (La. 3/28/03), 840 So.2d 572. Thus, Underwriters have the right to prosecute this appeal, if they could have intervened in ASI's suit against LeoTran in the trial court proceedings.
La. C.C.P. art. 1091, authorizing intervention in a pending action, provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
Jurisprudentially, we have held that the requirements for intervention are twofold: the intervenor must have a justiciable interest in, and connexity to, the principal action, and the interest must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. Atchley v. Atchley , 97-474 (La. App. 5 Cir. 1/14/98), 707 So.2d 458, 459. A "justiciable interest" is defined as "the right of a party to seek redress or a remedy against either [the] plaintiff or [the] defendant in the original action or both, and where those parties have a real interest in opposing it." Id.
Here, ASI's action against LeoTran is to determine LeoTran's liability for tortious conversion, breach of contract, bad faith, and damages for the loss of ASI's cash that was lost or damaged while in LeoTran's care, custody, or control. Underwriters, *1147 as the insurer of LeoTran under an armored car cargo liability policy that was in effect at the time ASI's cash went missing, has a direct justiciable interest that is related or connected to the object of the principal action because Underwriters could ultimately be the party responsible for paying all or part of the judgment owed by its insured. Under law and jurisprudence, we find that Underwriters could have intervened (and did so) in the underlying proceedings; they simply failed to do so in a timely fashion as the default judgment had been confirmed and, thus, there was no "pending action" within which to intervene. La. C.C.P. art. 1091. However, this procedural error by Underwriters does not affect their right to pursue the instant appeal. See ANR Pipeline Co. v. La. Tax Comm'n , 08-1148 (La. App. 1 Cir. 10/17/08), 997 So.2d 92, 101, writ denied , 09-0027 (La. 3/6/09), 3 So.3d 484. Underwriters clearly have standing to appeal the November 29, 2017 default judgment entered against LeoTran.
Timeliness of Appeal
ASI avers that even if Underwriters have standing to appeal, the filing of their devolutive appeal was untimely because their filing of the motion for new trial was untimely. We disagree. The record shows that the default judgment was signed by the trial court on November 29, 2017. Thereafter, in accordance with La. C.C.P. art. 1913,[6] the clerk of court prepared a notice of signing of the default judgment on November 30, 2017 for service upon the Louisiana Secretary of State by the East Baton Rouge Parish Sheriff, which service was accomplished on December 7, 2017. Pursuant to La. C.C.P. art. 1974, the delay for Underwriters to apply for a new trial commenced to run the following day, on December 8, 2017, and did not expire until seven days later, exclusive of holidays, or until December 18, 2017.[7] Thus, Underwriters' motion for new trial, filed on December 18, 2017, was timely.
The record confirms that the trial court signed an order on February 26, 2018 denying Underwriters' motion for new trial and that Underwriters moved for a devolutive appeal on April 10, 2018. In accordance with La. C.C.P. art. 2087(A)(2), Underwriters was well within the sixty-day delay period for taking a devolutive appeal, and thus, we find Underwriters' appeal is timely.[8]
II. The Default Judgment
Standard of Review
Generally, an appellate court's review of a default judgment is governed *1148 by the manifest error standard of review. Arias v. Stolthaven New Orleans, LLC , 08-1111 (La. 5/5/09), 9 So.3d 815, 818. However, when the court of appeal "finds that a reversible legal error or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits." Id. ; Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). Although a presumption exists that the record supports a default judgment, the presumption does not exist when the record upon which the judgment is rendered indicates otherwise. Morice v. Alan Yedor Roofing , 16-532 (La. App. 5 Cir. 2/8/17), 216 So.3d 1072, 1079-1080.
Applicable Law
A defendant's failure to comply with Articles 1001 and 1002 of the Louisiana Code of Civil Procedure exposes the party to a judgment of default.[9] The law and procedure governing default judgments is found in La. C.C.P. arts. 1701, 1702, and 1702.1. Article 1701 allows for a preliminary default to be entered against a properly served defendant if he does not answer a petition or file other pleadings within the time prescribed by law.[10] A judgment of default is sometimes referred to as a "preliminary default." Arias , 9 So.3d at 819.
Article 1702 sets forth the evidentiary requirements necessary for confirming a default judgment. Specifically, La. C.C.P. art. 1702(A) requires that a judgment of default be confirmed by proof of the demand "sufficient to establish a prima facie case." La. C.C.P. art. 1702(B) sets forth the evidentiary requirements for proving a prima facie case sufficient to confirm a default judgment.[11] These requirements differ depending upon the nature of the obligation, be it conventional or delictual. If the obligation is conventional, a petitioner need only submit "affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case." La. C.C.P. art. 1702(B)(1).[12] If *1149 the obligation is delictual, such as in the instant case, the "testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand." La. C.C.P. art. 1702(B)(2).[13] In short, "when the demand is based upon a conventional obligation, proof by affidavit can be sufficient, and when the demand is in tort, the plaintiff must testify but affidavits can be used for corroborating evidence." [Emphasis supplied.] Arias , 9 So.3d at 820 n. 11.
La. C.C.P. art. 1702.1 establishes the procedure for confirming a default judgment without a hearing when the default is confirmed pursuant to La. C.C.P. art. 1702(B)(1) (i.e. , when the demand is based upon a conventional obligation), and La. C.C.P. art. 1702(C) (i.e. , when the demand relates to a suit on open account). Article 1702.1 provides the following:
A. When the plaintiff seeks to confirm a preliminary default without appearing for a hearing in open court as provided in Article 1702(B)(1) and (C), along with any proof required by law, he or his attorney shall include in an itemized form with a written motion for confirmation of preliminary default and proposed final default judgment a certification that the suit is on an open account, promissory note, or other negotiable instrument, on a conventional obligation, or on a check dishonored for nonsufficient funds, and that the necessary invoices and affidavit, note and affidavit, or check or certified reproduction thereof are attached. If attorney fees are sought under R.S. 9:2781 or 2782, the attorney shall certify that fact and the fact that the number of days required by R.S. 9:2781(A) or 2782(A), respectively, have elapsed since demand was made upon the defendant.
B. The certification shall indicate the type of service made on the defendant, the date of service, and the date a preliminary default was entered, and shall also include a certification by the clerk that the record was examined by the clerk, including therein the date of the examination and a statement that no answer or other pleading has been filed within the time prescribed by law or by the court.
La. C.C.P. art. 194 sets forth those particular orders and judgments that need not be signed by the district court in open court, but rather, may be signed in chambers, i.e. , without holding a hearing. Specifically, La. C.C.P. art. 194(6) provides, in pertinent part:
The following orders and judgments may be signed by the trial judge in chambers:
(6) Order or judgment which may be granted on ex parte motion or application, except ... a judgment granting or confirming a default [.] [Emphasis supplied.][14]
Thus, when reviewing La. C.C.P. arts. 1702(B)(2) and 194(6) together, it is clear that at the time ASI moved to confirm its default against LeoTran on November 29, 2017, in order to confirm a default judgment involving a delictual action, the trial judge was required to confirm the default in open court.
*1150 Application of Law
For the following reasons, we find the trial court's confirmation of the default judgment in favor of ASI and against LeoTran did not comply with the procedural requirements set forth La. C.C.P. arts. 1701, 1702, and 1702.1 for properly entering and confirming a default judgment. Consequently, we find the final default judgment is procedurally defective for several reasons (any one of which requires this Court to vacate the judgment): (1) it is based on an invalid preliminary default; (2) no confirmation hearing was held in open court, and no live testimony of ASI was presented in compliance with La. C.C.P. art. 1702(B)(2) ; and (3) ASI failed to comply with the procedural requirements of La. C.C.P. art. 1702.1, which governs confirmation of a preliminary default without a hearing in open court.
1. The Default Judgment is Based on an Invalid Preliminary Default
In this ordinary proceeding, LeoTran was required to file an answer or other responsive pleading to ASI's petition within fifteen (15) days after being served with citation. La. C.C.P. art. 1001. The record shows that LeoTran was served through the secretary of state on October 30, 2017. Thus, LeoTran had until 11:59 p.m. on November 14, 2017-the fifteenth day-to file a response to ASI's petition. However, on November 14, 2017-prior to the expiration of LeoTran's deadline for filing responsive pleadings -ASI moved for the entry of a preliminary default.[15] The record reflects that even though LeoTran's deadline for filing an answer had not yet elapsed, the deputy clerk certified on November 14, 2017 "that no answer or other pleadings [had] been filed [by LeoTran] in this matter."
It is axiomatic that until a "defendant ... fails to answer or file other pleadings within the time prescribed by law ," it is premature for a plaintiff to move the court to enter a judgment by default against him. La. C.C.P. art. 1701(A). [Emphasis supplied.] See Whitney Bank v. NOGG, L.L.C. , 15-1399 (La. App. 1 Cir. 6/3/16), 194 So.3d 819, 823. Though the preliminary default was not entered into the trial court's minutes until November 15, 2017, the record on appeal is devoid of any certification by the deputy clerk that on that date -the earliest date upon which a preliminary default against LeoTran could legally have been requested-no answer or other pleading had been filed by LeoTran. Because the record shows that ASI prematurely requested that a preliminary default be entered against LeoTran, we find the preliminary default was procedurally defective and invalid as a matter of law. Consequently, because the judgment confirming the default was based on a procedurally defective preliminary default, we find the final default judgment is likewise procedurally defective and must be vacated.
2. A Confirmation Hearing is Required to Confirm a Default Under La. C.C.P. art. 1702(B)(2) When the Demand is in Tort
Underwriters argue the trial court's confirmation of the default judgment was procedurally flawed because under La. C.C.P. art. 1702(B)(2), since ASI's motion specifically pled that it was seeking a default judgment based on a delictual obligation, the court was required to hold a *1151 hearing in open court before confirming the default. We agree. See La. C.C.P. art. 194(6). The law in effect at the time ASI moved to confirm its default against LeoTran on November 29, 2017 specifically excepted a judgment granting or confirming a default from those judgments a district court may sign in chambers.
We also find that La. C.C.P. art. 1702(B)(2) expressly requires that when the demand is in tort, such as ASI's claim against LeoTran in the instant case, the plaintiff must provide live testimony; affidavits and other exhibits attached thereto can be used for corroborating evidence. Arias , 9 So.3d at 820 n. 11 ; W.H. Cary, Sr., Estate, L.L.C. v. Duhon , 10-1526 (La. App. 3 Cir. 5/25/11), 64 So.3d 922, 925. There is no indication in the record before us that the trial court held a hearing prior to confirming ASI's default judgment against LeoTran. The record is devoid of any minute entry reflecting that a hearing was held; there is no transcript of any proceeding held that day; and, the judgment does not indicate that a hearing was held. As noted previously, in its motion for confirmation of the default judgment, ASI specifically requested that the judgment be confirmed "based on the attached documents," and only in the alternative, requested that a hearing be held. We find the trial court committed legal error by confirming the default judgment without holding a hearing in open court and without requiring the plaintiff to provide testimony in accordance with La. C.C.P. art. 1702(B)(2).
3. Confirmation of a Default Pursuant to La. C.C.P. art. 1702(B)(1) Requires Strict Compliance With the Mandatory Requirements of La. C.C.P. art. 1702.1.
ASI contends for the first time on appeal that the default judgment against LeoTran was based "in part" on a conventional obligation and, as such, the trial court's confirmation of the default judgment without a hearing was permitted by La. C.C.P. art. 1702(B)(1). Even assuming ASI's contention is correct, and even though La. C.C.P. art. 1702.1 permits confirmation of a default judgment without a hearing for claims based on conventional obligations, this "permission" does not cure ASI's procedural problems in this case. The law in this Circuit is clear that the requirements of La. C.C.P. art. 1702.1 are mandatory and that a plaintiff's failure to strictly comply with these requirements is fatal to the plaintiff's judgment. Lonergan v. Metlife , 98-767 (La. App. 5 Cir. 2/10/99), 729 So.2d 81, 82-83. Specifically, Article 1702.1 requires that the written motion for confirmation of default include with it in an itemized form a certification that: (1) the suit is based on conventional obligation; (2) the necessary supporting documents are attached to the motion; (3) establishes the details of service on the defendant; and (4) includes the required certification from the clerk. See La. C.C.P. art. 1702.1(A) and (B).
A review of the record in the instant matter confirms that ASI did not comply with the mandatory codal requirements for confirming a default judgment without a hearing. First, while ASI filed a written motion for confirmation of default, attaching an affidavit with exhibits annexed thereto, ASI did not include with the motion the requisite certification that the suit was based on a conventional obligation. In fact, not only was there no certification or even a mention in ASI's motion that its suit against LeoTran was based on a conventional obligation, ASI's motion explicitly states that "[p]ursuant to La. C.C.P. art. 1702(B)(2), ASI's demand is based, in part, upon a delictual obligation ...." [Emphasis supplied.]
Next, ASI's motion states that LeoTran was served with a copy of the petition *1152 through the Secretary of State on October 30, 2017, and that "[a]s shown by the Record and/or the Certificate of the Clerk of Court attached hereto," LeoTran's "15-day legal delay" for answering the petition had "expired" without LeoTran having filed responsive pleadings or having requested an extension of time. Although the preliminary default contains a certification signed by the deputy clerk of court stating that no responsive pleadings had been filed in the matter (which certification we noted, supra , was signed prior to the actual expiration of LeoTran's deadline for filing responsive pleadings), there was no such certification accompanying ASI's default judgment as required by La. C.C.P. art. 1702.1.
Additionally, although the final default judgment contains language stating that "[c]onsidering the motion of ... ASI ..., the evidence submitted in support thereof, and the entire record of this matter (all of which is hereby admitted into evidence) ...[,]" ASI's written motion did not request the trial court to admit the entire record into evidence.[16] To the contrary, a review of ASI's motion shows that ASI expressly "request[ed] the Court [to] confirm the default judgment against LeoTran based on the documents," consisting solely of the affidavit of Brian Menard and the exhibits annexed thereto.
We find that the documentation submitted by ASI does not comply with the mandated requirements of La. C.C.P. art. 1702.1. ASI failed to provide in itemized form a certification that the suit was based on a conventional obligation, indicating the type and date of service on LeoTran, and the date the preliminary default was entered. ASI also failed to include a certification by the clerk that the record was examined, the date of examination, and that no responsive pleadings had been timely filed. These same type of omissions were made by the plaintiff in Lonergan , supra , and this Court held these deficiencies were fatal to the plaintiff's judgment. Even assuming these deficiencies could have been cured by introduction of the entire record into evidence, ASI's motion failed to request that the entire record of these proceedings be made a part of its motion or that the entire record be considered by the court prior to its rendition of judgment.[17] The requirements of La. C.C.P. art. 1702.1 are mandatory. Lonergan , 729 So.2d at 83. ASI's failure to comply with these requirements requires this Court to vacate the final default judgment. Id. ; see also VSA, Inc. v. Catalanotto , 97-897 (La. App. 5 Cir. 1/27/98), 708 So.2d 1090, 1092.
DECREE
For the foregoing reasons, because we find the final default judgment to be procedurally *1153 fatally flawed, we vacate the judgment and remand the matter for further proceedings.
JUDGMENT VACATED; MATTER REMANDED

In this litigation, defendant, LeoTran, is sometimes spelled "Leotran," and at other times spelled "LeoTran." For consistency within this opinion, we will refer to the defendant as "LeoTran."

In December 2015, Leonard Tolleson and his son, who was not an employee of LeoTran, were arrested for stealing ASI's cash. They posted bail and, according to the parties, have not been seen since.

Prior to ASI's filing of the instant suit, in order to resolve its coverage claims against Underwriters, on July 18, 2016, ASI instituted an action against Underwriters in the 24th Judicial District Court Parish of Jefferson, bearing docket number 762-957, Division "B," seeking a declaratory judgment that the Policy provides coverage for ASI's loss (the "Coverage Suit"). On December 14, 2017-two weeks after the trial court in the instant matter confirmed ASI's default judgment against LeoTran finding LeoTran liable to ASI for the $1,348,000 that was lost or damaged while in LeoTran's care, custody, and control-the trial court in the Coverage Suit granted summary judgment in favor of ASI finding that ASI was a customer of LeoTran, and that ASI's property was lost or damaged while in the care, custody and control of LeoTran. Finding that the directors and officers exclusion did not apply, the trial court declared that Underwriters is liable to ASI and that the Policy affords coverage for ASI's loss, including money lost or damaged while in the care, custody and control of LeoTran. Underwriters have appealed the trial court's declaratory judgment, which appeal is currently pending in 18-CA-164 c/w 18-CA-306, and is assigned to this same appellate panel.

Though ASI's petition asserts a breach of contract claim against LeoTran, there is no mention in ASI's motion for confirmation of the preliminary default that its demand against LeoTran is based, even in part, on a conventional obligation or that it was pursuing a default judgment on a conventional obligation pursuant to La. C.C.P. art. 1702(B)(1).

In its petition for intervention, Underwriters averred that, despite the ongoing litigation between ASI and Underwriters in the Coverage Suit, ASI failed to notify Underwriters that it was seeking a default judgment, and ASI also failed to apprise the trial court in the instant matter of the pending Coverage Suit when it moved to confirm the default. As noted, in the final default judgment, the trial court found LeoTran liable to ASI for the $1,348,000 that was lost or damaged while in LeoTran's care, custody or control. One of the arguments asserted by Underwriters in the Coverage Suit was that ASI failed to prove that LeoTran was liable to ASI for the loss of the money, which liability Underwriters claimed was a prerequisite to triggering coverage under the Policy. Moreover, though ASI maintains in its appellate brief that the trial court dismissed Underwriters' petition of intervention, with prejudice, on January 22, 2017, the record does not support this contention. To the contrary, the record shows that on that date, the trial court denied ASI's proposed order to dismiss Underwriters' petition of intervention, with prejudice.

La. C.C.P. art. 1913(B) provides, in pertinent part, that "[n]otice of the signing of a final default judgment against a defendant ... on whom citation was served through the secretary of state, and who filed no exception, answer, or other pleading, shall be served ... in the case of a defendant originally served through the secretary of state, by service on the secretary of state." In the instant matter, because ASI perfected service upon LeoTran through the secretary of state, pursuant to La. C.C.P. art. 1913(B), the notice of signing of the default judgment was required to be served upon the secretary of state.

La. C.C.P. art. 1974 states that "[t]he delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913."

La. C.C.P. art. 2087(A)(2) states, in pertinent part, that "[e]xcept as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or execution of an appealable order or judgment may be taken within sixty days of ... [t]he date of the mailing of notice of the court's refusal to grant a timely application for a new trial ...."

La. C.C.P. art. 1001 provides, in pertinent part, that "[a] defendant shall file his answer within fifteen days after service of citation upon him, except as otherwise provided by law." La. C.C.P. art. 1002 states that "[n]otwithstanding the provisions of Article 1001, the defendant may file his answer or other pleading at any time prior to the signing of a default judgment against him."

La. C.C.P. art. 1701(A) provides that "[i]f a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, a preliminary default may be entered against him. The preliminary default may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the preliminary default shall consist merely of an entry in the minutes." In an ordinary proceeding, such as in the case sub judice , a defendant is generally required to file an answer or other responsive pleading within fifteen (15) days after service of citation upon him. La. C.C.P. art. 1001.

La. C.C.P. art. 1702, Confirmation of Default Judgment, provides, in pertinent part:
B. (1) When a demand is based on a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.

A "conventional" obligation is "an obligation that results from the actual agreement of the parties; a contractual obligation." BLACK'S LAW DICTIONARY, 1102 (7th ed. 1999).

A "delictual" obligation is an obligation constituting a tort. BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE, Second Edition, 262 (Oxford University Press 2001) (1987).

La. C.C.P. art. 194(6) was amended by 2018 La. Act. 195, effective August 1, 2018, to remove the exception requiring a judgment granting or confirming a default to be signed in open court.

We note that the copy of ASI's motion for entry of preliminary default contained in the record on appeal is not a stamped copy and does not evidence that the pleading was actually filed or the time that it was filed. The certificate of service attached to the motion, however, which was signed by ASI's counsel of record, is dated November 14, 2017.

Even though ASI's motion made various references to the record, we find these references are insufficient to constitute a request that the entire record be made a part of the motion.

We note that our brethren on the First and Second Circuit Courts of Appeal have taken a contrary position and held that if a plaintiff fails to meet all of the procedural requirements set forth in La. C.C.P. arts. 1702 or 1702.1, the trial court has the option to reject consideration of the submittal of the request for confirmation of default or it may review the record to be certain that confirmation is warranted. See McCann v. Anderson , 07-1378 (La. App. 1 Cir. 6/6/08), 991 So.2d 1086, 1089-1090 ; Discover Bank v. Peters , 38,366 (La. App. 2 Cir. 4/14/04), 870 So.2d 602, 606. See also Ernest N. Morial New Orleans Exhibition Hall Auth. v. New Limits Enterprise, LLC , 16-0706 (La. App. 4 Cir. 4/5/17), 215 So.3d 974, 978, wherein the Fourth Circuit, in accord with this Court, ruled that "the legislative use of the term 'shall' makes clear that a party moving for confirmation of a default judgment must strictly comply with La. C.C.P. art. 1702.1." The Third Circuit is also in agreement with this Court's position. See John Guidry Const. Co., Inc. v. Rivertown Properties, Inc. , 517 So.2d 853, 855 (La. App. 3d Cir. 1987).