NAR SOLUTIONS, INC.

VERSUS

BRYAN K. KUHN

NO. 21-CA-256

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 803-040, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

January 26, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Marc E. Johnson

**<u>JUDGMENT VACATED. REMANDED. ANSWER TO APPEAL</u>**
**<u>DENIED.</u>**
 **FHW**
 **JGG**
 **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
NAR SOLUTIONS, INC.
James E. Uschold
Mark J. Boudreau

COUNSEL FOR DEFENDANT/APPELLANT,
BRYAN K. KUHN
Stephen D. Marx

**WICKER, J.**

In this appeal defendant-appellant, Bryan J. Kuhn, one of three 2015 owners of immovable property, seeks reversal of the trial court's February 3, 2021 final default judgment in favor of plaintiff-appellee, NAR Solutions, Inc. (NARS), a successor tax sale purchaser.[1] In its judgment, the trial court: (1) ordered the preliminary default confirmed; (2) declared the August 2015 tax sale of the property to be valid; (3) declared the subsequent notice of tax sale to parties of interest valid and the requirements of due process satisfied; (4) declared Bryan J. Kuhn's interest in the property quieted; and (5) declared NARS to be full owner of the property that maintains the right to obtain a writ of possession against Bryan J. Kuhn. For the reasons that follow, we vacate the trial court's February 3, 2021 final default judgment, deny the relief requested by NARS in its answer to Bryan Kuhn's appeal, and remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case revolves around a piece of immovable property located at 2116 N. Turnbull Drive, Metairie, LA 70001 (the "Property"). The Property was purchased by Henry J. Kuhn, Jr. and Shirley Miller in 1962. Upon the death of both parents, respectively, their four children, Tracey K. Arvanitis, Deborah K. Boudreaux, Henry Kuhn, III, and Bryan J. Kuhn, became co-owners in equal shares of the Property.[2] On October 30, 2009, Tracey K. Arvanitis and Bryan J. Kuhn entered into a cash sale wherein she sold her twenty-five percent interest in the Property to her brother

---

[1] In the appeal briefs and the caption of this case, appellant has been referred to as either "Bryan K. Kuhn" or "Bryan J. Kuhn." For consistency throughout this opinion, appellant-defendant will be referenced as Bryan J. Kuhn which was the full name listed in the 2000 and 2009 Judgments of Possession.

[2] Shirley Kuhn died in 1998, and thereafter, on January 19, 2000, a judgment of possession awarded her four children one-fourth each of their mother's half interest in the property with a usufruct in favor of her husband Henry J. Kuhn, Jr. Mr. Kuhn died in 2006, and thereafter, on November 6, 2009, a judgment of possession awarded each of his four children one-fourth of their father's half interest in the property.

for $45,000.00. Thereafter, for about ten years, Bryan J. Kuhn owned fifty percent of the Property, and his two siblings, Deborah K. Boudreaux and Henry Kuhn, III, each owned twenty-five percent of the Property. After both the August 11, 2015 tax sale and the conclusion of the subsequent redemption period[3] but before the subject litigation was instituted, on August 14, 2019, Henry Kuhn, III, and Deborah K. Boudreaux, each donated their respective twenty-five percent interest in the Property to their brother, Bryan J. Kuhn, in an Act of Donation. At that point, Bryan J. Kuhn became the sole owner of the Property. From 2010 through 2014, during the period in which the three siblings owned the Property, no one paid the *ad valorem taxes* due on the Property.

Due to the tax delinquency, on August 5, 2015, Newell Normand, Tax Collector of Jefferson Parish, sold the Property at a tax sale to Mark Laughlin for $13,047.76, which covered the unpaid Property taxes for the tax years of 2010 through 2014 and other related costs. A Tax Sale Certificate, dated August 11, 2015, was recorded in the Jefferson Parish conveyance records on August 12, 2015. In the Tax Sale Certificate, the Sheriff and Ex-Officio Tax Collector expressly stated that he:

> "mailed and published the notice required by law and…. advertised and listed in The New Orleans Advocate, the property to be sold for delinquent property taxes with interest and costs for the year of 2014 and prior in the city of Gretna July 22, 2015 and July 29, 2015, and giving notice in the issues of the newspaper and in the list as advertised the following described immovable property appearing in the name of KUHN, BRYAN J." …."tax debtor or any person interested personally or as heir, legatee, creditor, or otherwise, shall have the right to redeem the property for the period of three years from the filing of this tax sale certificate. The redemption may take place by paying the price given including costs and five

---

[3] The redemptive period has been defined in La. Const. art. VII, § 25(B)(1), which provides that the property "shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." *LPR, L.L.C. v. Naquin*, 20-0847 (La. App. 1 Cir. 2/19/21), 319 So.3d 369, 377.

percent penalty thereon with interest at the rate of one
percent per month until redemption.

On November 20, 2019, Mark Laughlin executed a Quitclaim Deed to transfer his tax sale interest in the property to NARS, which was recorded on December 2, 2019, in the Jefferson Parish conveyance records.[4] On January 10, 2020, NARS filed a Petition to Confirm and Quiet Tax Sale Title and for Declaratory Judgment in the 24th Judicial District Court to cure any defects in the tax sale and to quiet title to the Property. Attached to the petition were two exhibits: (1) a certified copy of the August 11, 2015 Tax Sale Certificate and (2) Notice of Tax Sale.[5] Bryan J. Kuhn was personally cited and served with the petition and its attachments on January 13, 2020.[6] No citation and service upon Henry Kuhn, III, and Deborah K. Boudreaux was requested or attempted in January 2020.

After being personally served with NARS' petition and the exhibits attached thereto in 2020, Bryan J. Kuhn filed no responses, defenses, motions, or actions to redeem the tax sale certificate. More than six months later, on July 28, 2020, NARS filed a Motion for Entry of Preliminary Default. Prior to that filing, on July 27, 2020, the Clerk of Court for Jefferson Parish certified that "no answer of (sic) other pleadings have been filed in this matter." Thereafter, on July 28, 2020, the trial court issued an order that a preliminary default be entered against Bryan J. Kuhn.

On August 10, 2020, NARS filed a Motion to Confirm Preliminary Default Judgment and Supporting Memorandum. The exhibits attached to the motion were:

---

[4] Ownership of the tax sale property is not transferred until the tax debtor has been duly notified and both the three-year redemptive period and any right held by that person to assert a redemption nullity has terminated. La. R.S. 47:2121B. *Central Properties v. Fairway Gardenhomes, LLC*, 16-1855 (La. 6/27/17), 225 So.3d 441, 449. The term "tax sale" now denotes that the tax sale purchaser has purchased the tax lien in the form of a tax sale title, albeit with future rights of ownership after due notice to all "tax sale parties" and the expiration of the three-year redemptive period, as well as the filing of a suit to quiet title. *Id.*

[5] Also attached to the petition was a Tax Sale Certificate dated August 21, 2017 for the tax period of 2016 for the subject Property that was acquired by Alpha Capital/BMO Harris for taxes owed and other costs totaling $3,035.56. A Certificate of Redemption reflects that Mark Laughlin subsequently redeemed the Property from claims arising out of the August 17, 2017 tax sale. Since this certificate addresses a tax period outside of subject tax period on appeal, we will not address this tax delinquency for the Property.

[6] The Citation listed two addresses for Bryan J. Kuhn: (1) 2116 N. Turnbull Dr., Metairie, LA 70001, and (2) 4313 Page Dr., Metairie, LA 70003. The Sherriff's return reflected that Bryan J. Kuhn had been personally served on January 13, 2020.

(1) Affidavit of Mark J. Boudreau, counsel of NARS, outlining his due diligence of searching for the parties with an interest in the Property and any legal actions involving the Property; (2) January 19, 2000 Judgment of Possession in the Succession of Shirley Miller; (3) November 6, 2009 Partial Judgment of Possession in the Succession of Henry J. Kuhn, Jr.; (4) October 30, 2009 Cash Sale between Bryan J. Kuhn and Tracey K. Arvanitis wherein her twenty-five percent interest in the Property was sold to her brother for $45,000.00; (5) August 14, 2019 Act of Donation reflecting the sale by both Henry Kuhn, III, and Deborah K. Boudreaux of their respective twenty-five percent interest in the Property to Bryan J. Kuhn; (6) November 20, 2019 Quitclaim Deed executed by Mark Laughlin and a representative of NARS evidencing the sale of Mr. Laughlin's tax sale interest in the Property to NARS; (7) January 13, 2020 Sheriff's Return for Citation and Service showing personal service upon Bryan J. Kuhn of the Petition to Confirm and Quiet Tax Sale Title and for Declaratory Judgment along with a certified copy of the August 11, 2015 Tax Sale Certificate and Notice of Tax Sale; (8) August 4, 2020 Affidavit of Theresa Laughlin, Secretary and Director of NARS, attesting to NARS being the successive purchaser and current holder of the tax sale certificate; and (9) a certified copy of the August 11, 2015 Tax Sale Certificate. No evidence of service upon Henry Kuhn, III, or Deborah K. Boudreaux, the other Property owners at the time of the tax sale and during the three-year redemption period thereafter was attached to the Motion to Confirm Preliminary Default Judgment.

On November 4, 2020, NARS filed a Motion for Expedited Hearing and Supplemental Memorandum in Support of Motion to Confirm Preliminary Default Judgment to which were attached certified copies of the aforementioned exhibits and two additional attachments, the August 20, 2020 Revised Affidavit of Theresa Laughlin and the September 21, 2020 Certificate of Redemption.

At the January 6, 2021 confirmation hearing on NARS' motion, NARS introduced into evidence the entire record and all of exhibits attached to its motion and supplemental motion. It also offered the testimony of Theresa Laughlin, Secretary and Director of NARS, who testified that NARS purchased one hundred percent interest in the Property by Quitclaim Deed, and that neither Bryan J. Kuhn nor any other person with an interest in the Property had contacted NARS regarding the Property or filed an action for nullity of the tax sale. Mark J. Boudreau, counsel for NARS, also testified at the hearing. Mr. Boudreau admitted that there were two other co-owners, Henry Kuhn, III, and Deborah K. Boudreaux, who had an ownership interest in the Property which they later transferred to their sibling, Bryan J. Kuhn. Mr. Boudreau testified that he gave notice to both Henry Kuhn, III, and Deborah K. Boudreaux of the tax sale through certified and first-class mail pursuant to La. R.S. 47:2157. He explained that the certified letter for Henry Kuhn, III, was delivered and signed by the recipient. However, the certified letter for Deborah K. Boudreaux was returned. Mr. Boudreau testified that the letters sent in first-class mail to the co-owners were mailed to the addresses listed on the August 14, 2019 Act of Donation.[7] NARS introduced no documentary evidence of these two January 2020 notices.

Neither Bryan J. Kuhn nor either of the two previous co-owners, Henry Kuhn, III, and Deborah K. Boudreaux, were present at the confirmation hearing. In open court, the trial court granted the final preliminary default judgment.

On February 1, 2021, NARS filed a Final Default Judgment, which was granted by the trial court on February 3, 2021. In its judgment, the trial court: (1) ordered the preliminary default confirmed; (2) declared the August 2015 tax sale of the property to be valid; (3) declared the subsequent notice of tax sale to parties of

---

[7] In the August 14, 2019 Act of Donation, Ms. Boudreaux's address was listed as 4313 Page Drive, Metairie, LA 70003; and Henry Kuhn's address was listed as 1117 Green Acres Road, Metairie, LA 70003.

interest valid and the requirements of due process satisfied; (4) declared Bryan J. Kuhn's interest in the property quieted; and (5) declared NARS to be full owner of the property who maintains the right to obtain a writ of possession against Bryan Kuhn.  On April 8, 2021, Bryan J. Kuhn timely filed a Motion for Devolutive Appeal, which the trial court granted.[8] NARS answered the appeal wherein it has requested damages for a frivolous appeal.

**LAW AND ANALYSIS**

The seminal question before this Court is whether the evidence produced and introduced by NARS at the January 6, 2021 confirmation hearing was sufficient and in compliance with the Louisiana constitutional and statutory requirements as well as the interested parties' constitutional rights to due process in order to timely and adequately notify all interested parties of their right to redeem the property for a period of three years after recordation of the tax sale, which must be given at least six months before the end of the redemption period, and further of their subsequent right to seek nullification of the original tax sale.[9]

As preliminary matter, this Court will address whether the trial court's preliminary default and confirmation of default judgment complied with the procedural requirements prescribed by La. C.C.P. arts. 1701 and 1702.

---

[8] Bryan J. Kuhn seeks review of the trial court's judgment issued on February 3, 2021. Pursuant to La. C.C.P. art. 2087, Bryan J. Kuhn had seven days from February 3, 2021, exclusive of legal holidays, or February 10, 2021, to file an application for a new trial. Because he did not file an application for a new trial, Bryan Kuhn had sixty days from February 10, 2021, or until April 11, 2021, to file a motion for a devolutive appeal. Thus, the appeal is timely. *See Lasseigne v. E. Jefferson Gen. Hosp.*, 18-350 (La. App. 5 Cir. 7/19/18), 251 So.3d 1212.

[9] In 2008, the Louisiana legislature amended La. R.S. 47:2153 such that it is clear that tax sales may no longer be attacked as absolute nullities. *Alpha Capital US Bank v. White*, 18-0827 (La. App. 1 Cir. 12/21/18), 268 So.3d 1124, 1129, *writ denied*, 19-0135 (La. 3/18/19), 267 So.3d 89. There are now three statutorily enumerated challenges which, if proven, may be asserted to nullify a tax sale certificate, that is, (1) a payment nullity, (2) a redemption nullity, or (3) a nullity under La. R.S. 47:2162.  *Id*; *see* La. R.S. 47:2286. Each of those nullities are relative which are capable of being cured. *Id*; *see* La. R.S. 47:2286 and *Central Properties*, 225 So.3d at 449.

The judgment at issue was rendered by the trial court on February 3, 2021. Our review of the applicable default judgment statutes will consist of the law in effect when the judgment was issued.[10]

## STANDARD OF REVIEW

Generally, an appellate court's review of a default judgment is governed by the manifest error standard of review. *Libertas Tax Fund I LLC v. Mompoint*, 20-105 (La. App. 5 Cir. 10/5/20), 304 So.3d 581, 584, *writ denied*, 20-1387 (La. 1/26/21), 309 So.3d 348. However, when the court of appeal "finds that a reversible legal error or manifest error of material fact was made in the trial court, it is required to re-determine the facts *de novo* from the entire record and render a judgment on the merits." *Id*. Although a presumption exists that the record supports a default judgment, the presumption does not exist when the record upon which the judgment is rendered indicates otherwise. *ASI Fed. Credit Union v. Leotran Armored Sec., LLC*, 18-341 (La. App. 5 Cir. 11/7/18), 259 So.3d 1141, 1148.

## DISCUSSION

A defendant's failure to comply with Articles 1001 and 1002 of the Louisiana Code of Civil Procedure exposes the party to a judgment of default.[11] *Id*. The law and procedure governing default judgments which was in effect appeared in La. C.C.P. arts. 1701, 1702, and 1702.1. *Id*. Article 1701 allowed for a preliminary default to be entered against a properly served defendant if he does not answer a petition or file other pleadings within the time prescribed by law.[12] *Id*. Proper service

---

[10] La. C.C.P. art. 1701 has been repealed by Acts 2021, No. 174, § 6 effective January 1, 2022. Since the 1968 revisions, La. C.C.P. art 1702 has been amended several times, most recently by Acts 2021, No. 174, § 5, eff. Jan. 1, 2022 and Acts 2021, No. 259, § 2. Since the actions disputed in this case occurred before the 2021 default judgment revisions became effective, the prior law applies to this appeal.

[11] La. C.C.P. art. 1001 provided, in pertinent part, that "[a] defendant shall file his answer within fifteen days after service of citation upon him, except as otherwise provided by law." La. C.C.P. art. 1002 states that "[n]otwithstanding the provisions of Article 1001, the defendant may file his answer or other pleading at any time prior to the signing of a default judgment against him."

[12] La. C.C.P. art. 1701(A) provided that "[i]f a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, a preliminary default may be entered against him. The preliminary default may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the preliminary default shall consist merely of an entry in the minutes."

upon a defendant is required because "a defendant has a due process right to know what is at stake when a default is threatened." *Spear v. Tran*, 96-1490 (La. App. 4 Cir. 9/18/96), 682 So.2d 267, 271, *writ denied*, 96-3024 (La. 2/7/97), 688 So.2d 500.

La. C.C.P. art. 1702(A) outlined the general rules for the proof required to obtain a preliminary default, which provides, in part, that "a preliminary default must be confirmed by proof of the demand that is sufficient to establish a prima facie case and that is admitted on the record prior to the entry."[13] *Libertas*, 304 So.3d at 585. If no answer or other pleading is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the preliminary default. *Id*.

The evidentiary requirements for proving a prima facie case sufficient to confirm a default judgment is found in La. C.C.P. art. 1702(B).[14] *ASI Fed. Credit*

---

[13] The judgment at issue was rendered when the revisions under Acts 2017, No. 419, § 1., were in effect from August 1, 2017 to July 31, 2021, which was amended to substitute "preliminary default" for "judgment of default," and "judgment by default," and reads:

La. C.C.P. art. 1702, Confirmation of Preliminary Default, provides, in pertinent part,

> A. A preliminary default must be confirmed by proof of the demand that is sufficient to establish a prima facie case and that is admitted on the record prior to the entry of a final default judgment. The court may permit documentary evidence to be filed in the record in any electronically stored format authorized by the local rules of the district court or approved by the clerk of the district court for receipt of evidence. If no answer or other pleading is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the preliminary default. When a preliminary default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the preliminary default must be sent by certified mail by the party obtaining the preliminary default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the preliminary default.

[14] The same revisions that were in effect when the judgment at issue was rendered are applicable and read:

La. C.C.P. art. 1702, Confirmation of Preliminary Default, provides, in pertinent part:
> B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering a final default judgment.
> (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering a final default judgment.
> (3) When the sum due is on an open account or a promissory note or other negotiable instrument, an affidavit of the correctness thereof shall be prima

*Union*, 259 So.3d at 1148. These requirements differ depending upon the nature of the obligation, be it conventional or delictual. *Id*. If the obligation is conventional, a petitioner need only submit "affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case." La. C.C.P. art. 1702(B)(1). *Id*. If the obligation is delictual, the "testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand." La. C.C.P. art. 1702(B)(2). *Id*. at 1149.

However, a claim to quiet title did not fall within one of the exceptions under La. C.C.P. art. 1702(B) or (C)[15] that would allow hearsay evidence by way of affidavit and exhibits, nor does its submission comply with the strict mandates of La. C.C.P. art. 1702.1, which is necessary to proceed to a final judgment without a hearing.[16] *Libertas*, 304 So.3d at 584. Thus, the general rules for confirmation of a preliminary default judgment pursuant to La. C.C.P. art. 1702(A) apply to the instant case in which a hearing with live testimony and evidence was required. *Id. See*

_____

> facie proof. When the demand is based upon a promissory note or other negotiable instrument, no proof of any signature thereon shall be required.

[15] The same revisions that were in effect when the judgment at issue was rendered are applicable and read:

La. C.C.P. art. 1702(C), Confirmation of Preliminary Default, provides:

> In those proceedings in which the sum due is on an open account or a promissory note, other negotiable instrument, or other conventional obligation, or a deficiency judgment derived therefrom, including those proceedings in which one or more mortgages, pledges, or other security for the open account, promissory note, negotiable instrument, conventional obligation, or deficiency judgment derived therefrom is sought to be enforced, maintained, or recognized, or in which the amount sought is that authorized by R.S. 9:2782 for a check dishonored for nonsufficient funds, a hearing in open court shall not be required unless the judge, in his discretion, directs that such a hearing be held. The plaintiff shall submit to the court the proof required by law and the original and not less than one copy of the proposed final default judgment. The judge shall, within seventy-two hours of receipt of such submission from the clerk of court, sign the proposed final default judgment or direct that a hearing be held. The clerk of court shall certify that no answer or other pleading has been filed by the defendant. The minute clerk shall make an entry showing the dates of receipt of proof, review of the record, and rendition of the final default judgment. A certified copy of the signed final default judgment shall be sent to the plaintiff by the clerk of court, and notice of the signing of the final default judgment shall be given as provided in Article 1913.

[16] La. C.C.P. art. 1702.1 establishes the procedure for confirming a default judgment without a hearing when the default is confirmed pursuant to La. C.C.P. art. 1702(B)(1) (i.e., when the demand is based upon a conventional obligation), or La. C.C.P. art. 1702(C) (i.e., when the demand relates to a suit on open account).

*Precept Credit Opportunities Fund, L.P. v. Brown*, 20-114 (La. App. 4 Cir. 7/22/20), ____So.3d ____, 2020 WL 4199728, p. 4.

Confirmation of a default judgment is similar to a trial. *Libertas*, 304 So.3d at 584. It requires, with admissible evidence, "proof of the demand sufficient to establish a prima facie case." *Id.*, citing La. C.C.P. art. 1702(A). The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. *Id.* In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. *Id.*

Furthermore, "a certified copy of the tax sale certificate is prima facie evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale pursuant to La. R.S. 47:2155(B)." *See Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, *writ denied*, 20-00870 (La. 10/14/20), 302 So.3d 1120. Tax sales are presumed valid and the party attacking it bears the burden of proving its alleged invalidity. *Emoneyport.com Inc. v. Burger King Corp.*, 08-309 (La. App. 5 Cir. 9/30/08), 996 So.2d 496, *writ denied*, 08-2578 (La. 1/9/09), 998 So.2d 72. Placing the burden of invalidating the tax sale on the party attacking the sale is based on Louisiana's public policy favoring the validity of tax sales. *Id.*

Upon review of the record before us, in its Petition to Confirm and Quiet Tax Sale Title and for Declaratory Judgment, NARS averred that the Sheriff for the Parish of Jefferson sent pre-sale and post-sale notice to Bryan J. Kuhn, and also made reasonable efforts and attempts to identify and notify all other property owners. NARS annexed a certified copy of the Notice of Tax Sale and the August 11, 2015 Tax Certificate to the petition. A review of the August 11, 2015 Tax Certificate reveals that the Sheriff and Ex–Officio Tax Collector "mailed and published the notice required by law." However, absent from the evidence is proof of the mailed

notice of the tax sale to Bryon J. Kuhn or to the other two co-owners, Henry Kuhn, III, and Deborah K. Boudreaux, or a copy of the published advertisement in the New Orleans Advocate newspaper of the tax sale. More importantly, the August 11, 2015 Tax Certificate makes no mention of the other two co-owners, Henry Kuhn, III and Deborah K. Boudreaux, of the Property at the time of the tax delinquency and tax sale in 2015. Rather, it names only Bryan J. Kuhn as the tax debtor and references giving notice only to him. A review of the Jefferson Parish conveyance records in 2015 before the tax sale would have revealed the same information found in 2021 by NARS upon its search, specifically, the ownership interests of Henry Kuhn, III, and Deborah K. Boudreaux in the Property at the time of the tax sale and during the entire three-year redemption period thereafter. The exercise of reasonable due diligence of the public record by the Sheriff and Ex–Officio Tax Collector before the tax sale would have revealed the names of the three property owners at the time of the sale upon review of the following documents in the conveyance records: (1) November 6, 2009 Partial Judgment of Possession in the Succession of Henry J. Kuhn, Jr.; and (2) October 30, 2009 Cash Sale between Tracey K. Arvanitis and Bryan J. Kuhn.[17]

We find that NARS' reliance on the August 11, 2015 Tax Certificate as prima facie evidence that proper notice was provided to the co-owners is misplaced as the 2015 Tax Certificate itself, presumed to be accurate, reveals that the Tax Collector failed to give notice of the tax sale to two of the three property owners at the time of the sale. While the tax deed shall ordinarily be deemed prima facie evidence that a valid sale was made, Louisiana courts, since the 2009 amendments to the tax sale statutes, have reiterated the longstanding holding by the Louisiana Supreme Court that a statement in a tax deed declaring that notice was duly served on "the delinquent

---

[17] The January 19, 2000 Judgment of Possession in the Succession of Shirley Miller was absent from the Jefferson Parish Conveyance Records.

taxpayer," but thereafter naming someone other than the owner at the time of the tax sale proceedings, "cannot be in any manner construed as showing that the notice was served on the actual owner." *Jolie Maison Dev. Co., L.L.C. v. Drake*, 09-1129 (La. App. 1 Cir. 2/12/10) 2010 WL 502951; citing *In re Lafferranderie*, 114 La. 6, 11, 37 So. 990. 991–992 (1904); also see generally *West v. Negrotto*, 52 La. Ann. 381, 27 So. 75 (1899).

Here, the tax certificate at issue names only one co-owner as if he is the sole owner when in fact there were three co-owners of the Property at the time of the tax delinquency and tax sale. Bryan J. Kuhn did not acquire one hundred percent interest in the Property until the August 14, 2019 Act of Donation was executed. On appeal, Bryan J. Kuhn argued that he did not receive notice of the tax delinquency or the tax sale, and that neither of the other two co-owners, Henry Kuhn, III, and Deborah K. Boudreaux, received such notice. There is no evidence in the record of the nature of the notice, if any, received by Bryan J. Kuhn regarding the tax delinquency or the tax sale, and whether either the tax sale certificate or any other notice of the redemption period was made upon Bryan J. Kuhn, Henry Kuhn, III, and Deborah K. Boudreaux.

Further, in its petition, NARS mentioned that only Bryan J. Kuhn "has or may have in interest in the Property," making no reference to the Property interests of Henry Kuhn, III, and Deborah K. Boudreaux at the time of the tax sale and for the entire three-year redemption period thereafter. The record contains only a January 13, 2020 Sheriff's return for citation and service upon Bryan J. Kuhn, which was long past the date of the tax sale and the three-year redemptive period, and no evidence of same is present for Henry Kuhn, III, and Deborah K. Boudreaux. The petition is devoid of any mention of attempts or requests for notice for the other two 2015 co-owners of the Property.

Considering the evidence in the record and if all of the allegations set forth in the petition were denied by defendant, Bryan J. Kuhn, we find that NARS failed to introduce evidence into the record sufficient to overcome those objections and denials. The evidence offered by NARS in support of a preliminary default was insufficient because no evidence was produced that showed that notice of the tax delinquency or the tax sale had been attempted or made upon the three 2015 co-owners. For the reasons discussed herein, we further find that NARS failed to establish a prima facie case to support a default judgment, which requires this Court to vacate the judgment. Thus, we pretermit discussing Bryan J. Kuhn's assignments on appeal regarding whether NARS' notice of the tax sale complies with the constitutional and statutory requirements outlined in La. R.S. 47:2153 (pre-sale notice) and 47:2156 (post-sale notice) for the sale of immovable property for nonpayment of taxes.

In light of the foregoing, we deny NARS' answer to Bryan J. Kuhn's appeal wherein it requested damages for a frivolous appeal considering our review and findings discussed herein.

**DECREE**

For the reasons set forth herein, we vacate the trial court's February 3, 2021 final default judgment in favor of NARS and against Bryan J. Kuhn. We also deny the relief sought by NARS in its answer to appeal. This matter is remanded to the trial court for further proceedings consistent with this opinion.

**JUDGMENT VACATED. REMANDED.**
**ANSWER TO APPEAL DENIED**.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 26, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-256

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
MARK J. BOUDREAU (APPELLEE)          STEPHEN D. MARX (APPELLANT)

**MAILED**
JAMES E. USCHOLD (APPELLEE)
ATTORNEY AT LAW
700 CAMP STREET
SUITE 317
NEW ORLEANS, LA 70130